# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. GLEASON, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| ANDREW M. SAUL,[1] | : | No. 19-cv-03713-RAL |
| Commissioner of Social Security, | : | |
| Defendant | : | |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                                                        **April 24, 2020**
**U.S. MAGISTRATE JUDGE**

      John J. Gleason was denied social security benefits by the decision of an Administrative Law Judge ("ALJ"). Mr. Gleason contends that the ALJ's unfavorable decision was reached in error. Pl. Br. at 11 (Doc. No. 3–9). Specifically, Mr. Gleason argues that the ALJ erred by not properly weighing the opinion of the state-agency reviewer. *Id.* The Commissioner of Social Security ("Commissioner") responds that the ALJ's decision was supported by substantial evidence. Def. Br. at 4–11 (Doc. No. 12).

      After careful review, I agree with Mr. Gleason and find that the ALJ erred. For the reasons set forth below, I will grant Mr. Gleason's request for review and remand this matter for further proceedings consistent with this memorandum opinion.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 4, 2019, and is therefore substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 205(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## PROCEDURAL HISTORY

Mr. Gleason filed a claim for disability insurance benefits ("DIB") on September 19, 2016. R. 62–71. He alleged a disability onset date of March 18, 2016.[2] *Id.* His application was initially denied on December 19, 2016. *Id.*

After this denial, Mr. Gleason requested an administrative hearing before an ALJ. R. 82–83. The hearing was held on August 27, 2018. R. 31–58 (transcript of hearing). Mr. Gleason and a vocational expert, Daniel Rappucci, testified. *Id.* Following the hearing, on October 1, 2018, the ALJ issued a written decision, denying Mr. Gleason's claim. R. 16–26. The Appeals Council subsequently denied Mr. Gleason's request for review. R. 1–4. This appeal follows.

## FACTUAL BACKGROUND

### A. The claimant's background.

Mr. Gleason was born in March 1966, making him an "individual closely approaching advanced age" at the time of the alleged onset date of disability. R. 24. He graduated high school and then attended three years of college. R. 186. Over the past fifteen years, he has worked as a radiological equipment specialist. R. 24.

On May 29, 2015, Mr. Gleason was at work servicing a magnetic resonance imagining ("MRI") machine that had recently been having ongoing problems. R. 389, 435. When he was using probes to test the power monitor, there was a "big flash." R. 435. Mr. Gleason had been struck with 480 volts and 150 amps, causing his left arm to catch on fire. *Id.*; *see also* R. 562. He was rushed to the emergency room and then

---

[2] Mr. Gleason initially listed the onset date of his disability as May 30, 2015—the day after his workplace accident—but later amended it to May 18, 2016—his fiftieth birthday. R. 34.

2

transferred to the burn unit at Crozer-Chester Hospital, where he remained for eleven days. *Id.*

After this accident, Mr. Gleason stopped working. He applied for social security benefits on September 19, 2016, alleging disability based on his burns, post-traumatic stress disorder ("PTSD"), and anxiety. R. 63.

**B. The ALJ's decision.**

The ALJ issued an unfavorable decision on October 1, 2018, finding Mr. Gleason not disabled as defined by the Social Security Act. R. 26. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[3]

At step one, the ALJ concluded that Mr. Gleason has not engaged in substantial gainful activity ("SGA") since his alleged onset date of March 18, 2016.[4] R. 18.

At step two, the ALJ determined that Mr. Gleason had three severe impairments: anxiety and depression, status post burn to the left arm, and status post ulnar transposition and carpal tunnel release. R. 18–20. The ALJ found his right shoulder impairment to be nonsevere. R. 20.

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[4] The ALJ also found Mr. Gleason met the insured status requirements through December 31, 2020. R. 18.

3

At step three, the ALJ compared Mr. Gleason's severe impairments to those contained in the "Listings."[5] The ALJ concluded that Mr. Gleason's impairments, singly or in combination, did not meet or equal the criteria of any of the Listings. R. 20–22. Reaching this conclusion, the ALJ specifically ruled out Listings §§ 1.02 (relating to joint dysfunction), 11.04B (relating to neurological disorders), 1.08 (relating to soft tissue injuries), 12.04 (relating to depressive disorders), and 12.06 (relating to anxiety disorders). *Id.*

At step four, the ALJ assessed Mr. Gleason's residual functional capacity ("RFC"), or "the most [Mr. Gleason] can still do despite [his] limitations." 20 C.F.R. § 404.1545. After a review of the objective medical evidence and subjective medial opinion evidence, the ALJ concluded that Mr. Gleason retained the capability to perform light work,[6] subject to certain limitations. R. 22–24. These restrictions included:

> [N]o limitations in his ability to sit, stand and walk. With his dominant hand (right), he can lift/carry no more than 25 pounds frequently and 50 pounds occasionally. With his non-dominant hand (left), he can lift/carry no more than 10 pounds frequently and 20 pounds occasionally. He is also limited to performing no more than routine repetitive tasks.

R. 22.

---

[5] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work he may have performed in the past. *Id.*

[6] As defined by the regulations, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

Based on his RFC, the ALJ found that Mr. Gleason is unable to perform his past relevant work as a radiological equipment specialist. R. 24.

At step five, the ALJ identified three representative occupations that exist in significant numbers in the national economy that Mr. Gleason could perform considering his age, education, work experience, and RFC. R. 24–25. These jobs were assembler, finish inspector, and masker. R. 25.

Because the ALJ identified jobs that Mr. Gleason could perform, he ultimately found Mr. Gleason "not disabled." R. 25–26.

## DISCUSSION

**A. The standard of review.**

My review of the ALJ's decision is deferential; I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing to *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

**B. The ALJ erred in evaluating the state-agency reviewer's report.**

Mr. Gleason's sole argument on appeal is that the ALJ improperly rejected the state-agency reviewer's opinion that he could only occasionally use his left hand to handle, finger, and feel.[7] Pl. Br. at 7–9. He alleges that the ALJ's rationale—that no treating or examining source imposed such a restriction—is incorrect. *Id.* The Commissioner disagrees, arguing that the ALJ relied on substantial evidence when evaluating the medical opinion evidence. Def. Br. at 6–10. After reviewing the ALJ's

---

[7] Originally, Mr. Gleason also contended that the ALJ erred by not weighing the consulting orthopedic examiner's report. Pl. Br. at 8–9. However, after considering the Commissioner's response, Mr. Gleason withdrew that argument. Pl.'s Reply at 1 n.1.

6

opinion and the administrative record, I agree with Mr. Gleason and find that the ALJ erred in analyzing the state-agency reviewer's opinion.

In assessing a claimant's RFC, the ALJ is required to consider "all relevant evidence" and adequately explain the basis of the RFC determination.[8] *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *see also* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on the relevant evidence in your case record."). Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41. While the ALJ has the authority to weigh and evaluate conflicting relevant evidence, he "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F. 3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Although the ALJ does not need to reference every piece of evidence in the record, *Fargnoli*, 247 F.3d at 42, he must provide a "clear and satisfactory" explanation of his decision. *See, e.g., id.* at 41; *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir. 1981); *see also Salles*, 229 F. App'x 140, 146 (3d Cir. 2007) (not precedential) ("When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings."). Otherwise, the district court is unable to meaningfully review the decision and determine "if significant probative evidence was not credited or simply ignored." *See Fargnoli*, 247 F.3d at 42 (quoting *Burnett*, 220 F.3d at 121).

---

[8] The determination of a claimant's RFC is an administrative decision made by the ALJ. *See* 20 C.F.R. § 404.1546(c).

Medical opinion evidence is relevant evidence that the ALJ must evaluate and weigh when assessing a claimant's RFC.[9] 20 C.F.R. § 404.1527(c).[10] The administrative record, here, contained opinions from three medical sources who considered Mr. Gleason's physical work limitations: his treating hand surgeon, Dr. Sidney Jacoby; a consulting examining physician, Dr. Noubar Didizian; and a state-agency reviewing physician, Dr. Mark Bohn. *See* R. 23.

Dr. Jacoby was the hand surgeon who Mr. Gleason began seeing after his accident. R. 479. As part of each treatment note, Dr. Jacoby opined on Mr. Gleason's ability to return to work.[11] R. 479–511. In the beginning, he recommended that Mr. Gleason remain out of work to focus on his rehabilitation and treatment. *See* R. 480 (note dated Sept. 14, 2015); R. 483 (note dated Oct. 21, 2015); R. 484 (note dated Nov.

---

[9] A treating source's opinion is entitled to controlling weight when supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. *See id.* § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). A treating source's opinion may be rejected "on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429; *see also Brown v. Astrue*, 649 F.3d 93, 197 (3d Cir. 2011) (ALJ "clearly explained" why she gave greater weight to the opinion of a medical consultant than to a treating physician). So too may an opinion be rejected if there is insufficient clinical data, *see Newhouse v. Heckler*, 733 F.2d 283, 286 (3d Cir. 1985), or if the opinion is contradicted by the physician's own treating notes or the patient's activities of daily living, *see Smith v. Astrue*, 359 F. App'x 313, 316–17 (3d Cir. 2009) (not precedential). The opinion may be accorded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citing to *Newhouse*, 753 F.2d at 286).

Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give the relevant medical sources by considering factors such as the length of the treatment relationship and frequency of visits, nature and extent of the treatment relationship, whether the medical source supports the opinion with medical evidence, whether the opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. § 404.1527(c). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

[10] The rules regarding the evaluation of opinion evidence have changed, effective March 27, 2017. Mr. Gleason's case arose under the old regulations. *See* 20 C.F.R. § 404.1520c.

[11] The ALJ summarized Dr. Jacoby's treatment records at step two. *See* R. 18–20.

8

19, 2015); R. 487 (note dated Dec. 7, 2015); R. 488 (note dated Jan. 11, 2016); R. 490 (note dated Feb. 25, 2016). As Mr. Gleason displayed steady progress, Dr. Jacoby advised that he could return to work that did not require any lifting, pushing, or pulling more than five pounds with his left upper extremity. R. 492–93 (note dated April 21, 2016). This restriction was increased to clerical work that did not involve lifting, pushing, or pulling more than ten pounds with his left upper extremity, later increasing it up to twenty pounds. R. 494–95 (note dated June 9, 2016); R. 497 (note dated July 18, 2016); R. 498 (note dated Sept. 22, 2016); R. 501 (note dated Nov. 3, 2016); R. 503 (note dated Dec. 29, 2016). Concluding that Mr. Gleason was nearing maximum medical improvement, Dr. Jacoby referred Mr. Gleason for a functional capacity evaluation ("FCE"). R. 498, 501, 503.

Dr. Jacoby noted that the FCE was completed in February 2017 and revealed that Mr. Gleason was unable to perform "critical job demands, such that [he] may work at a light medium physical level." R. 504. In addition, the FCE concluded that "pain limited most physical demands for the left upper extremity." *Id*. Going forward, Dr. Jacoby consistently referred back to the FCE when commenting on Mr. Gleason's work restrictions. R. 506 (note dated May 4, 2017); R. 510 (note dated July 13, 2017); R. 595 (note dated Nov. 6, 2017). However, the full FCE is not available in the administrative record.

Dr. Didizian performed an independent examination of Mr. Gleason on March 2, 2017, where he considered Mr. Gleason's ability to perform work-related functions.[12] R.

---

[12] The ALJ summarized both the findings from Dr. Didizian's physical examination as follows:

> According to a March 2, 2017 independent worker's compensation medical examination by Noubar Didizian, MD, the claimant had pain in his left forearm and a poor left full fist

9

562–69. Dr. Didizian found that Mr. Gleason could use his left upper extremity to frequently lift and carry ten pounds and occasionally lift and carry fifteen pounds. R. 568. He estimated that Mr. Gleason could frequently push/pull fifteen pounds and occasionally push/pull twenty pounds, for a total distance of thirty feet. *Id.* Dr. Didizian also determined that Mr. Gleason was not able to use his left hand for pushing and pulling but that it could be used for non-repetitive simple grasping. *Id.* He left the section related to fine manipulation blank. *Id.* Finally, Dr. Didizian restricted Mr. Gleason to only occasional reaching with his left arm. R. 569.

Dr. Bohn, a state-agency consultant, assessed Mr. Gleason's physical capacity after reviewing his records on December 19, 2016. R. 67–69. In his report, Dr. Bohn opined that Mr. Gleason was limited to occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; and pushing or pulling with his left upper extremity up to twenty pounds. R. 67. While Dr. Bohn found that Mr. Gleason had no restriction in his ability to reach, he could only occasionally handle, finger, and feel.[13] R. 68. To support these findings, Dr. Bohn primarily cited to Dr. Jacoby's records.[14] R. 69.

---

(due to stiffness in his fingers). He had diminished strength on the left. Dr. Didizian concluded that the claimant had reached maximum medical improvement. He had ongoing left hand restrictions with residual stiffness of the left digits and in making a fist.

R. 19 (citations omitted).

[13] Additionally, he found that Mr. Gleason could frequently use ramps/stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. R. 68. Dr. Bohn also cautioned that Mr. Gleason should avoid concentrated exposure to the cold, humidity, vibration, and hazards. R. 69.

[14] In particular, he relied on the treatment record dated September 22, 2016, where Mr. Gleason displayed persistent small finger dyskinesia, persistent left ring finger trigger digit, near full range of motion, ability to make a fist, and a right grip strength of 135 and left grip strength of 72. R. 69. Dr. Bohn also noted that Mr. Gleason underwent left ulnar nerve transposition and left carpal tunnel release with forearm fasciotomy. *Id.*

Considering these opinions, the ALJ gave "significant" weight to Dr. Jacoby's and Dr. Didizian's reports, while only giving "some" weight to Dr. Bohn's report. R. 23. The ALJ reasoned that Dr. Jacoby's and Dr. Didizian's findings were "consistent with each other and the medical evidence of record." *Id.* With respect to Dr. Bohn's report, the ALJ credited it "as of the date it was rendered," but disregarded the limitations relating to Mr. Gleason's ability to handle, finger, and feel. R. 23. His reasoning was that the "treating and examining sources did not note any limitations" in these areas. *See id.* After careful review, I find that the ALJ's rejection of Dr. Bohn's restriction to only occasional handling, fingering, and feeling is not supported by substantial evidence.

The ALJ provided two reasons for disposing of Dr. Bohn's opinion—the treating source did not note any similar limitations and neither did the examining source. Both of these reasons are flawed, rendering the ALJ's decision unsupported by substantial evidence.

First, the ALJ improperly placed significance on the lack of an opinion from the treating source, Dr. Jacoby, on Mr. Gleason's capacity to handle, finger, and feel. Dr. Jacoby's progress notes only briefly addressed work-related capabilities, as he anticipated a more comprehensive functional evaluation to be completed when Mr. Gleason reached maximum medical improvement. *See* R. 480–503. Dr. Jacoby never opined, in these notes, on Mr. Gleason's ability to perform those functions. *See id.* After the FCE was completed, Dr. Jacoby endorsed its findings, but because the report is missing from the record, it is unclear whether Mr. Gleason's ability to handle, finger, and feel was evaluated. *See* R. 504–10. Yet the ALJ inferred from this absence that Mr. Gleason did not experience any difficulties in handling, fingering, and feeling. *See* R. 23. Such an inference is, at best, weak evidence. Notably, the Third Circuit has criticized

11

ALJs for reading into physicians' "silences" in this manner. *See Mason*, 994 F.2d at 1068 n.15 (citing to *Allen v. Brown*, 881 F.2d 37, 41 (3d Cir. 1989); *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985)) ("It would not seem appropriate to construe a physician's silence as to a patient's pain as an affirmative statement that the patient is not in pain."). Therefore, the fact that Dr. Jacoby did not note any restrictions in handling, fingering, and feeling is not substantial evidence, on its own, of Mr. Gleason having no limitation in these areas.

Second, the ALJ incorrectly interpreted the report of the examining source, Dr. Didizian. According to the ALJ, Dr. Didizian opined that Mr. Gleason could use his left upper extremity to "frequently push and pull 15 pounds, occasionally push and pull 20 pounds and could do repetitive simple grasping." *See* R. 23. But what Dr. Didizian actually found was that Mr. Gleason was unable to use his left hand for pushing and pulling, even in a non-repetitive manner, and that he could use his left hand for *non-repetitive* simple grasping.[15] *See* R. 568. The ALJ clearly misread the report, leading him to mistakenly conclude that Dr. Didizian did not note any limitations in the areas of handling, fingering, and feeling. *See* R. 23. The ALJ then used this mistaken conclusion to justify his dismissal of Dr. Bohn's opinion. Mistakes and factual errors are not substantial evidence to support an ALJ's decision. *See, e.g.*, *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) ("This mistake, and others like it, indicate that the ALJ's decision to discredit Dr. Grem was not supported by substantial

---

[15] The ALJ's confusion likely stemmed from Dr. Didizian changing the relevant section heading by adding "non-" before the term "repetitive," as well as the fact that Dr. Didizian opined in the previous section on Mr. Gleason's ability to push and pull generally compared with this section where he was asked specifically about the left hand's ability to push and pull. *See* R. 568.

evidence.").[16] As the ALJ does not cite to other substantial evidence, I find that the ALJ's decision to reject Dr. Bohn's opinion as to Mr. Gleason's ability to handle, finger, and feel was in error.

Furthermore, this error was not harmless. The ALJ's disability decision was predicated on the vocational expert's testimony that there were three representative jobs in the national economy that Mr. Gleason could perform based on his age, education, past relevant work, and RFC. *See* R. 56–57. Had an additional restriction limiting Mr. Gleason to only occasional fine and gross manipulation been imposed, the vocational expert testified that Mr. Gleason would be unable to work those jobs. *See id.* On remand, the ALJ should properly reconsider the medical opinion evidence relating to Mr. Gleason's ability to handle, finger, and feel.

## CONCLUSION

Based upon the discussion above, Mr. Gleason's request for review is granted. Accordingly, the final decision of the Commissioner of Social Security is reversed, and this matter is remanded for further proceedings.

**BY THE COURT:**

__s/Richard A. Lloret_____
RICHARD A. LLORET
U.S. Magistrate Judge

---

[16] *See also Rodriguez v. Colvin*, No. 16-4322, 2018 WL 1474073, at *4–5 (E.D. Pa. March 23, 2018) ("Courts have concluded that substantial evidence cannot be based on factual errors."); *Coniglio v. Colvin*, No. 15-40, 2016 WL 4385870, at *13 (E.D. Pa. July 26, 2016) ("Where, as here, the ALJ's decision to reject the opinion of a treating physician is predicated on factual mistakes or mischaracterizations of evidence, that decision is not supported by substantial evidence.").

13